606 So.2d 1076 (1992)
John E. BAINE a/k/a "Red" Baine
v.
STATE of Mississippi.
No. 89-KA-0551.
Supreme Court of Mississippi.
August 12, 1992.
*1077 Thomas H. Pearson, Cheryl Ann Webster, Clarksdale, for appellant.
Michael C. Moore, Atty. Gen., Patricia W. Sproat, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the Court:

I. INTRODUCTION
This appeal from a conviction for touching a child for lustful purposes and another count for sexual battery arose from the August 10, 1988 judgment of the Circuit Court of Coahoma County.[1] The circuit judge sentenced the defendant to five years on the first count and twenty years on the second, to run consecutively.
The appellant timely filed a notice of appeal and raises the following issues:
A. Whether the trial court erred in admitting out-of-court statements made by the complainant.
B. Whether the trial court erred in admitting experts' opinions on the veracity of the complainant's statements.
C. Whether the trial court erred in allowing the state to introduce as rebuttal witnesses three persons who had sat in the courtroom during the trial.
Because the trial court committed no reversible error, this Court affirms Baine's conviction.

A. Facts
On January 29, 1988, Ms. Daley[2] picked up her seven-year-old daughter, Susie, from the day-care center. Susie had been staying at the facility, operated in the home of John "Red" Baine and his wife, Bobbie, *1078 for several years. On the way home Susie described a sexual battery committed toward her by "Mr. Red". After Susie's revelation, Ms. Daley notified the police, who notified the welfare authorities. When Ms. Daley took Susie for a medical examination, the examining physician found Susie's hymen to be very irregular in shape. Susie's statements led to this indictment against Baine.

B. Procedural History
On June 21, 1988, a Coahoma County grand jury issued a multi-count indictment against John "Red" Baine, charging him with touching a child for lustful purposes in violation of section 97-5-23 of the Mississippi Code and sexual battery in violation of section 97-3-95 of the Mississippi Code. The original indictment alleged that Baine committed crimes against three female children under the age of 14, including Susie Daley.
On July 14, the state gave notice that, pursuant to section 13-1-403 of the Mississippi Code, the state intended to offer the out-of-court statements of several young children. The court ruled that, of the four counts in the indictment Counts III and IV would be severed, leaving Counts I and II with Susie Daley as the sole complainant in this trial.
The jury convicted Baine on July 29, 1988. On August 8, the defendant filed for a judgment of acquittal notwithstanding the verdict or, alternatively, for a new trial, which was denied by the trial court.

II. LEGAL ANALYSIS
Under this Court's standard of review, the admissibility of evidence rests within the trial court's discretion. Wade v. State, 583 So.2d 965, 967 (Miss. 1991). This Court must determine, however, if the trial court employed the proper legal standard in its factfindings governing evidence admissibility. If the trial court incorrectly perceived the applicable legal standard, this Court operates with a substantially broader standard of review. See Holland v. State, 587 So.2d 848, 855 (Miss. 1991) (admissibility of confession); see also United States v. Vernor, 902 F.2d 1182, 1188 (5th Cir. [Miss.] 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 301, 112 L.Ed.2d 254 ("clearly erroneous" standard applies to review of trial court's finding of trustworthiness of out-of-court statements).

A. Whether the trial court erred in admitting out-of-court statements made by the complainant.

1. Whether the trial court erred in admitting into evidence statements made by the complainant to her mother.
Baine contends that statements Susie made to her mother on the day of the alleged last incident should not have been admitted as excited utterances, especially the statements made at home later in the evening. The state contends the trial court properly admitted the statements under evidence rule 803(2), the hearsay exception for excited utterances.
According to the record, Susie first began attending Bobbie's Day Care in August, 1984. On the evening of January 29, 1988, Mrs. Daley picked Susie up from the day care at 6:00 p.m. Within two blocks of the day-care center, Susie said, "Mom, if I tell you something, do you promise I won't get in trouble?" When Ms. Daley assured her daughter that she would not be in trouble, Susie said, "Mom, Mr. Red has been playing with my bad spot." Ms. Daley asked her daughter how long this activity had been occurring; her daughter replied that the abuse had occurred throughout the duration of her attendance at the day-care center. Susie told her mother that, on this particular day, Baine had hurt her. Once Ms. Daley and Susie arrived home, Mr. and Ms. Daley asked Susie if the touching could have been an accident. Susie replied, "No, not under my clothes." Susie also indicated that Baine had touched her inside her shirt, on her breasts.
Later that night, when Susie went to bed, Ms. Daley lay down beside her daughter and talked. Susie related that she hated Christmas at the day-care center because every time she got near the mistletoe *1079 Baine would grab her and kiss her. When questioned by her mother, Susie said, "Well, mom, it's not like we kiss." Susie further explained, "It's like married people kiss."
The defense raised no objection to Ms. Daley's recounting Susie's statements. Further, the Court found Susie's statements to be "spontaneous and without indication of manufacture." The Court agreed that Ms. Daley could not relate other people's sides of the conversations. At trial, Susie testified.
Mississippi's evidentiary rule 803(2) states that, even with the declarant available to testify, the hearsay prohibition does not apply to an excited utterance, "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Miss.R.Evid. 803(2) (1988). Recently, this Court observed that a child's statements made to her mother on the same day that sexual abuse occurred could arguably have been admissible as excited utterances had they not been given only in response to the mother's questions. In the Interest of C.B., 574 So.2d 1369, 1372 (Miss. 1990); see also Griffith v. State, 584 So.2d 383, 387 (Miss. 1991) (remanding for an 803(2) determination); Mitchell v. State, 539 So.2d 1366, 1369-71 (Miss. 1989) (discussion of rule in other jurisdictions). But see Sanders v. State, 586 So.2d 792, 795 (Miss. 1991) (fact that child makes statements in response to questions does not ipso facto disqualify statements from being considered excited utterances). In Morgan v. Foretich, 846 F.2d 941, 946-48 (4th Cir.1988) the court concluded that a child's description of his abuse three hours after the incident should have been admitted "whether or not the child would be competent to be a witness." See also United States v. Iron Shell, 633 F.2d 77, 85-86 (8th Cir.1980), cert. denied, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981) (nine-year-old assault-with-intent-to-rape victim's declarations made 45 to 75 minutes after assault were admissible under 803(2)). According to the Advisory Committee's Note on the equivalent federal rule, for a declaration to instill the confidence required by 803(2), it must have been uttered "in a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication." Fed.R.Evid. 803, Advisory Committee's Note (citing 6 Wigmore § 1747, p. 135) cited in S. Saltzburg & M. Martin, Federal Rules of Evidence Manual, v.1 at 374 (1990).
Thus, the weight of authority supports the characterization as an excited utterance of a child's allegations of abuse volunteered within hours after the abuse allegedly occurred. While authorities do not fix a particular time period, the key indicia of trustworthiness appear to be evidence of excitement, voluntariness of statement, and closeness in time of the statement to the alleged incident.
In this case, regarding preservation for review, the defense specifically stated, in chambers, that it did not object to Ms. Daley's relating Susie's declarations. At trial the defense objected only to Ms. Daley's testimony about Susie's comments unrelated to the crime or other people's comments. Thus, Baine has not preserved this point for review by this Court. Notwithstanding the defense failure to preserve the error and although the trial court did not specifically mention evidence rule 803(2), the court effectively satisfied the rule's requirements in its finding that Susie's declarations met the Williams v. State, 427 So.2d 100 (Miss. 1983) requirements of spontaneity and non-manufacture. Thus, the court properly admitted Ms. Daley's recitation of Susie's declarations, and the court made its proper ruling of admissibility plain on the record. On both procedural and substantive grounds, the appellant's allegation of error fails in this issue.

2. Whether the trial court erred allowing the child-abuse expert witnesses to testify to the alleged child-abuse victim's out-of-court statements.
The defendant asserts that the trial court improperly allowed as inadmissible hearsay Welfare Department employees, Anita Reginelli and Terri Haltom, psychometrist[3], *1080 Lisa Lilly, and psychologist, Dr. Timothy Sisemore, to relate out-of-court statements Daley had made to them. Baine urges that, because the complaining witness herself, testified, her hearsay declarations cannot have a sufficiently probative value to be admitted under evidence rule 803(24), the residual hearsay exception. Baine contends that the state introduced the hearsay declarations in order to bolster Daley's testimony, thus violating evidence rule 613.
Baine asserts that, regarding the testimony of a psychometrist, Lilly, and psychologist, Sisemore, the trial court did not make a finding of trustworthiness before admitting the testimony. Baine also urges that the testimony cannot be considered admissible under 803(4), regarding medical diagnoses and treatment.
On July 19, 1988, the defense moved to suppress all of Susie's out-of-court statements as inadmissible hearsay. On July 22, 1988, the trial court held a hearing in order to establish the reliability of the child victim's hearsay declarations. Ms. Lilly, a psychometrist who performs therapy and psychological testing with special emphasis on child abuse, testified that she believed Susie's statements of abuse to be true. Lilly stated that she arrived at this conclusion based upon the details provided by Susie, the manner in which Susie recalled more memorable incidents, the consistency of Susie's account over several recitations, Susie's accompanying display of emotions, Susie's ability to easily recall without delivering a rote, fixed-sequence narrative, and the child-like terms Susie used to describe the incidents. In addition to the manner in which Susie described the abuse, Lilly remarked that Susie's self-image and behavior represented the classic characteristics of a sexually abused child.
Terry Haltom, a social-work supervisor with the Welfare Department and an expert in child sexual abuse, testified that she considered Susie's account truthful, based on the child's language, emotion, tone of voice, and provision of details. Haltom stated, "All of the various indicators made me believe that she fit this sexual-abuse syndrome and that she was, in fact, telling us the truth and that she had been sexually abused." Anita Reginelli, who works under the supervision of Haltom, also stated that she believed Susie. She stated that Susie appeared embarrassed but, through the use of general, non-leading questions, gave a believable account.
The court ruled that the child victim's out-of-court statements, "basically the ones that have been disclosed to the defense and made under the statutory requirements," (Miss. Code Ann. § 13-1-403 (1972) would be admissible. The court reserved ruling on the admissibility of Dr. Timothy Sisemore's testimony.
In chambers, the trial court reviewed the testimony of Dr. Timothy Sisemore, a clinical psychologist specializing in child psychology of abused children. The court found Sisemore's testimony in compliance with section 13-1-403 of the Mississippi code.
In court, Dr. Sisemore discussed the indicia by which he assesses the reliability of a child's complaint. He then described how Susie's statements met these indicia. Dr. Sisemore saw Susie eight times and formed the confident opinion that she had been sexually abused. He related Susie's detailed descriptions of her abuse.
The current, relevant Mississippi rule appears in evidence rule 803(25), the tender years hearsay exception:
A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, *1081 such statement may be admitted only if there is corroborative evidence of the act.
Miss.R.Evid. 803(25) (1991); see also Griffith v. State, 584 So.2d 383, 386 (Miss. 1991).
Also relevant is Rule 803(4) of the 1991 Mississippi Rules of Evidence, which governs statements made for the purposes of medical diagnosis or treatment:
Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness. For purposes of this rule, the term "medical" refers to emotional and mental health as well as physical health.

(emphasis reflects 1991 amendment); see Baine v. State, 604 So.2d 249, 253-254 (Miss. 1992) Baine I; See also United States v. Renville, 779 F.2d 430 (8th Cir.1985).
As was noted in a companion case, Baine v. State, 604 So.2d 249, the trial court in 1988 did not have the benefit of the 1991 amendment to Rule 803(4) or the 1989 cases decided by this Court on this issue. Hall v. State, 539 So.2d 1338 (1989); Mitchell v. State, 539 So.2d 1366 (Miss. 1989); Leatherwood v. State, 548 So.2d 389 (Miss. 1989). This Court holds that the instant case is controlled by the same legal analysis and conclusion as in Baine I, i.e., that the trial court did not commit reversible error in admission of this testimony of Reginelli, Haltom, Sisemore, and Lilly. It constituted properly admitted evidence. If this case were remanded, the new 1991 amendment, tender-years exception, 803(25), would support the admission of their testimony. The testimony as admitted in this trial meets the requirements of the rule: the trial court, outside of the jury's presence, found substantial indicia of the declarations' reliability, and Susie testified. Despite the fact that the court reached its conclusions under a now-void statute,[4] the record shows that the court considered criteria which support a conclusion of admissibility under the current amended rules of evidence.
In addition to admissibility under 803(25), the 1991 amended medical diagnosis and treatment exception, 803(4), supports the admission of the testimony of Sisemore and Lilly.

B. Whether the trial court erred in admitting experts' opinions on the veracity of the alleged victim's out-of-court statements.
Baine complains that the court allowed expert witnesses Lilly and Sisemore not only to recount hearsay declarations, but to offer an expert opinion of their truthfulness. Baine asserts that this testimony denied him a fair trial.
The record shows that the child-victim and a young eyewitness testified. Following Susie's testimony, several more experts testified, as previously described. To summarize:
Social worker Haltom stated, "All of the various indicators made me believe that she fit this sexual abuse syndrome and that she was, in fact, telling us the truth and that she had been sexually abused." (T. 350, 359). Baine did not object. (T. 350, 359-60).
Psychologist Dr. Sisemore described how Susie's statements to him met the indicia of sexual abuse. (T. 431-35). On redirect examination, Sisemore stated that, were Susie's father's an alcoholic, Sisemore would not change his opinion of the reliability and credibility of Susie's declarations. Baine did not object. (T. 466). *1082 Psychometrist Lilly stated that, in her expert opinion based on a number of factors, Susie had been sexually abused. (T. 495). Lilly stated that Susie identified Red Baine as a person who "had gotten her to trust him and tricked her." Baine did not object. (T. 498-99).
Baine did not raise this issue in his motion for new trial.
In this case, Baine failed to object at trial and failed to raise this issue in his motion for new trial. Thus, he did not preserve the issue for review by this Court. On this procedural ground, his allegation of error should fail.

C. Whether the trial court erred in allowing the state to introduce as rebuttal witnesses three persons who had sat in the courtroom during the trial.
Baine complains that the state violated a nondiscretionary right of witness exclusion when, with full knowledge and without notifying the court that the witnesses had attended the trial, it presented three rebuttal witnesses, Janet Smith, her daughter, Jeannie Smith, and Belinda Marconi. Baine further asserts that, because he allegedly had abused other daughters of Janet Smith, she and her daughter bore a material interest in the case sub judice. The sole prejudicial testimony of which Baine complains addresses whether he only held small babies on his lap, in comparison to Susie's declarations that he abused her while she sat in his lap.
The record shows that before trial the state indicated its intent to call the parents of alleged victims, including the parents of Smith. The state indicated its intent to call these persons in order to elicit testimony of their children's out-of-court declarations. The circuit clerk's March 24, 1988 witness list includes the names of Janet Smith, Jeannie Smith, and Belinda Marconi.
On July 25, 1988, as previously stated, the court severed Counts III and IV of the indictment. Remaining counts I and II listed Daley as the sole child-victim. Having severed two counts that related to other alleged victims, the court denied a defense motion to exclude from the courtroom witnesses in other cases. After the jury had been sworn in, the defense again moved that potential witnesses in the severed counts, III and IV, be excluded from the courtroom. The court denied the motion.
During the cross-examination of Ms. Daley, she testified, "I have picked [Susie] up where she was sitting in his lap in the den." When the prosecutor asked Susie, "When he touches you, where do you normally sit?" Susie replied, "In his lap." Other witnesses also testified to Baine's positioning of children on his lap.
The defendant's daughter-in-law occasionally worked at the center during the year before trial. She testified that she saw no children over the age of three sit in her father-in-law's lap.
During trial, Janet Smith, young Jeannie Smith, and Belinda Marconi approached the district attorney because they had heard testimony they believed not to be true. They had not expected to be called as witnesses in this case. The district attorney asked the three rebuttal witnesses not to return to the courtroom as an observer. In a post-trial hearing, Smith stated that "in no way whatsoever" did she tailor her testimony to that which she had heard. She stated, "I just wanted the truth to be known." She also commented, "It's just real disturbing to hear the untruths."
On rebuttal, Belinda Marconi testified that she saw Baine with children in his lap "just about every time I walked in the facility," including her six-year-old. Janet Smith testified that, when two of her daughters were five and six, and later, eight and nine, respectively, she saw them both sitting on Baine's lap. Smith had never before discussed with the state the issues to which she testified on rebuttal.
Jeannie Smith, twelve years old when she stopped attending the day-care center, did not testify on the subject of whether children sat in Baine's lap. On post-trial cross-examination, Jeannie stated that she had volunteered to testify and had not made anything up, nor had she discussed her *1083 testimony with other potential rebuttal witnesses.
After the jury returned a guilty verdict on both counts, the court held a hearing on a motion for judgment notwithstanding the verdict or, alternative, for a new trial.
The court noted that the witness exclusion rule had been invoked in this case. The court, however, found no evidence of connivance or circumvention of the exclusion rule: the court noted that the rule could not have applied to persons who did not expect to be witnesses; and the state did not seek to influence the witnesses. Further, the court noted that the defense did not object to the rebuttal witnesses until after the case's completion. The court reasoned that, even if it declared a mistrial, testimony at a new trial would not differ from that adduced in the instant case. The court found the rebuttal witnesses truthful and their testimony not significantly prejudicial. Thus, the court denied the motion for judgment of acquittal notwithstanding the verdict or, alternatively, for a new trial.
Regarding scope of review, this Court will not per se reverse a trial court for failing to order a mistrial after a witness exclusion rule violation. The resultant degree of prejudice to the defendant must first demonstrate that the trial court abused its discretion. Douglas v. State, 525 So.2d 1312, 1318 (Miss. 1988).
Mississippi's procedural rule regarding the exclusion of witnesses states, "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." Miss.R.Evid. 615. Often called "the rule," the witness-exclusion rule serves to discourage a witness's tailoring her testimony to what she has heard from the stand and the rule serves to facilitate exposing false testimony. Doby v. State, 532 So.2d 584, 589 (Miss. 1988); Moffett v. State, 540 So.2d 1313, 1317 (Miss. 1989). As indicated by the mandatory language of the rule, the trial court does not have any discretion in its application; the court must apply it when a party invokes it. Douglas v. State, 525 So.2d 1312, 1316 (Miss. 1988). Baine cites United States v. Ell 718 F.2d 291, 292 (9th Cir.1983) for the proposition that a party holds a nondiscretionary right of witness exclusion.
Once a witness has violated the rule, however, the remedy lies within the court's discretion. Douglas, 525 So.2d at 1317 (citing United States v. Warren, 578 F.2d 1058, 1076 (5th Cir.1978)). Remedies may include prospectively excluding the witness where prejudice will otherwise ensue; striking the witness's testimony where connivance gave rise to the testimony; striking the witness's testimony where the testimony gave rise to prejudice; or, most appropriately, allowing the other party to subject the witness to a "full-bore cross-examination" on the facts of the rule violation. Douglas, 525 So.2d at 1317 (citing United States v. Jimenez, 780 F.2d 975, 981 (11th Cir.1986); United States v. Blasco, 702 F.2d 1315, 1327 (11th Cir.1983); Warren, 578 F.2d at 1076, n. 16). The court may also instruct the jury that it may consider the rule violation when the jury evaluates the violating witness's credibility. Douglas, 525 So.2d at 1317 (citing Jimenez, 780 F.2d at 981; United States v. Cox, 752 F.2d 741, 748 (1st Cir.1985).
Because of the state's failure in its duty to notify the court, the state deprived the court of the ability to implement any of the remedies this Court has recommended. It was too late to instruct the jury, allow full-bore cross-examination before the jury, or even strike the testimony. Based on that hearing, the court did not find sufficient prejudice to warrant a new trial.
This Court fortunately has the benefit of the trial court's detailed fact-finding on which it based its ruling. Importantly, the trial court considered the rebuttal testimony not "so prejudicial that it would be really prejudicial to the defense's case." Equally importantly, the court found that the witnesses had not attended prior proceedings or testified out of any connivance. Also, having no choice but to judge credibility, the court found that witnesses to have been truthful and their testimony, untailored. *1084 Perhaps as a matter of judicial economy, the court noted that a new trial would not produce different evidence. According deference to the trial court's searching inquiry, this Court finds the error harmless.
Baines also lacks merit in his factually mistaken assertion that the state had earlier served the rebuttal witnesses with subpoenas. The record does not support his allegation. The witnesses' names do appear on the list of potential witnesses, which was prepared before severing the trials of other complainants. Given the trial court's thorough examination with the vigorous participation of the defense the trial court committed no abuse of discretion.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS P.J., and ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
DAN M. LEE, P.J., dissents with separate written opinion.
Presiding Justice DAN M. LEE, dissenting:
Because I am concerned with how far this Court will allow "bolstering" testimony by so-called experts in sexual abuse cases (which testimony amounts to no more than "sexual reconstructionists" attempting to speculate upon whether a witness is to be believed), I dissent. See Leatherwood v. State, 548 So.2d 389 (Miss. 1989) and Mitchell v. State, 539 So.2d 1366 (Miss. 1989), both of which require reversal of this case.
NOTES
[1] Section 97-5-23, "Touching, handling, etc., child for lustful purposes," states:

Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child under the age of fourteen (14) years, with or without the child's consent, shall be guilty of a high crime... .
Miss. Code Ann. § 97-5-23 (Supp. 1988).
The "sexual battery" definition states: "A person is guilty of sexual battery if he or she engages in sexual penetration with... a child under the age of fourteen (14) years." Miss. Code Ann. § 97-3-95 (Supp. 1988). The definition of sexual battery encompasses the act of a perpetrator's digitally penetrating a female child's vagina. Roberson v. State, 501 So.2d 398, 400-01 (Miss. 1987).
[2] Baine was also convicted of touching a child for lustful purposes on July 7, 1989, Baine v. State, 604 So.2d 249 (Miss. 1992); and on July 10, 1989, Baine v. State, 604 So.2d 258 (Miss. 1992); on appeal here in Cause No. 89-KA-1179. The names of the complaining witness and rebuttal witnesses have been changed to maintain anonymity.
[3] A person qualified to administer and interpret objective psychological tests. Webster's Third New Int'l Dictionary at 1823 (1986).
[4] See Miss. Code Ann. §§ 13-1-403, -411 (Supp. 1988); see also Hall v. State, 539 So.2d 1338 (Miss. 1989).